LEO GRACE, Adminstrator of the Estate of ODA GRACE, Deceased, Respondent, v. L. A. SMITH, C. T. SCHMIDT and the WABASH RAILROAD COMPANY, a Corporation, Defendants, WABASH RAILROAD COMPANY, a Corporation, Appellant, No. 44583—277 S. W. (2d) 503.

Court en Banc, April 11, 1955.

*Boyle G. Clark, Robert C. Smith, Jr.,* and *Raymond C. Lewis, Jr.,* for appellant; *J. H. Miller* and *Clark & Becker* of counsel.

*Ralph L. Alexander* and *R. E. Ausmus* for respondent; *Alexander, Harris & Welliver* of counsel.

150

[black redacted box]

[504] HOLLINGSWORTH, J.—Plaintiff, administrator of the estate of Oda Grace, deceased, sued defendents, Wabash Railroad Company, a corporation, L. A. Smith, its engineer, and C. T. Schmidt, its fireman, for the wrongful death of Mrs. Grace, when a car in which she was riding was struck by a Wabash train at a public crossing in the City of Sturgeon, Missouri. The jury discharged Smith and Schmidt but found a verdict against the Wabash in the amount of $5,000, and judgment was so entered.

The Wabash appealed to the Kansas City Court of Appeals, which affirmed the judgment of the trial court. See Grace v. Smith et al., 270 S. W. 2d 79. Thereafter, upon application of said defendant, the cause was transferred to this court under the provisions of Art. V, § 10, of the Constitution of Missouri. In its brief filed in the Court of Appeals and in a supplemental brief filed here, defendant asserts error: (1) in the overruling of its motion for judgment notwithstanding the verdict upon grounds, (a) defendant cannot be held liable for a tort committed by its agent when the agent was exonerated of the tort and especially is this true, appellant says, because the case was not pleaded, tried or submitted on such a theory, (b) defendant was under no duty to maintain a light in a wigwag signalling device installed at the crossing upon which plaintiff's [505] intestate was killed or to keep an electric light bulb therein burning, (c) plaintiff's intestate was guilty of contributory negligence as a matter of law, and (d) the sole cause of plaintiff's intestate's death was the negligence of the driver of the automobile in which she was riding when struck by defendant's train; and (2) error in the giving and refusal of certain instructions.

Substantial portions of the opinion of the Kansas City Court of Appeals will be used without quotation marks.

After alleging various facts, with which we are not here especially concerned, plaintiff charged:

"That the said collision and the fatal injury and death of plaintiff's intestate were directly and proximately caused and occasioned by the carelessness and negligence of the defendents, L. A. Smith and C. T. Schmidt and Wabash Railroad Company, its agents, servants and employees in the following particulars, to-wit:

"(A) That the defendants carelessly and negligently operated the said engine and train of cars at a rate of speed which, under the

circumstances, was high, dangerous and excessive, to-wit: 75 miles per hour.

\* \* \* \* \*

"(D) That the defendant(s) operated said engine and train of cars at a high and dangerous rate of speed and at a speed in excess of six (6) miles per hour in violation of the Ordinance of the City of Sturgeon, Missouri.

"(E) That the defendants failed to have and provide a watchman at said crossing and failed to have and provide a mechanical device thereat that would give sufficient warning of the approach of said engine and train of cars.

\* \* \* \* \*

"(I) That the defendants carelessly and negligently attempted to cross said Ogden Street when said defendants knew or should have known in the exercise of the ordinary degree of care that the signal light on said Ogden Street crossing was not functioning."

Defendant maintains a line of railroad through the City of Sturgeon. It runs in an east-west direction and crosses Ogden Street, the main street of Sturgeon, near the depot. It is a north-south street. There are three sets of tracks at this crossing, the furthest south is the house track, the set next, to the north, is the passing track, and the set north of that is the main line. The distance from the southernmost point of the south rail of the house track to the northernmost point of the north rail of the main line is 32 feet. There was a conventional crossarm railroad sign on the south side of the tracks, along the east side of Ogden Street. On the north side of the crossing, on the west side of the street, was a wigwag signal device, consisting of a metal disk from 12 to 15 inches in diameter, with a black cross painted on it, and with a red light bulb in the center of the disk. This device was attached to a post so that the disk faces traffic on the street and, when a train approaches, it lights up and swings in an arc of about one yard. On top of the post is a bell which rings at the same time that the wigwag operates. This device had been in use there for a long time prior to the date of the accident.

The evidence was to the effect that Mrs. Grace and her husband, aged respectively 72 and 70 years, had for many years lived on a farm about two miles south of Sturgeon; that they did their shopping and banking in Sturgeon, where they also attended church; that they frequently visited their daughter, who lived north of Sturgeon; that they frequently drove to town and to their daughter's home, over this crossing.

Mr. Carter, a lawyer who lived at Sturgeon, was driving south along Ogden Street, to his home, at about 7:10 p.m., on October 9, 1952. It was then dark. He testified that as he approached this crossing he heard a train approaching from the west and observed

the wigwag signal in operation; that he stopped his automobile about 60 feet north of the crossing and observed [506] an automobile approaching from the south; that he turned off his lights; that the automobile did not stop or slow down, but approached at a speed of 20 miles per hour; that the train was whistling and its bell was ringing; that the wigwag signal was in operation, the bell ringing; that he did not think the light was burning on the wigwag; that when the automobile entered upon the main line, it was struck by the train; that the train was travelling at a speed of 75 or 80 miles per hour; that when the bodies of Mr. and Mrs. Grace were found Mr. Grace was dead. Mrs. Grace died within a few minutes thereafter. Mr. Carter stated that at the time the accident occurred there were two boxcars parked on the house track, west of the crossing; that the track curves to the northwest from the crossing; that on account of the curve he did not think that one approaching from the south, in an automobile, could have seen a train approaching from the west, even in daytime; that such a person would not have been able to see the headlight of an approaching train but might have seen rays of light therefrom; that the boxcars would block the view; and that he first saw the oscillating wigwag and heard the bell when he was about 250 feet north of the crossing.

Mr. Seitz, signal maintenance man for the Wabash, stated that he was called to Sturgeon at about 10:00 p.m. that night to repair the light on the wigwag signal; that the wire was broken and the light was out; that three days before the light was in operation when he inspected it; and that it is possible for a light to operate at one time and fail to operate at another time, by reason of a broken wire.

Mr. Sexton stated that one night some ten days before the accident he observed a train pass over this crossing; that the light of the wigwag was not in operation; that the following day he asked the station agent of the Wabash if he had noticed this fact; and that the Wabash maintenance man arrived during this conversation.

Mr. Estepp stated that either on the morning of the accident or the day before he observed that the light on the wigwag was not in operation.

Mr. Jennings stated that after the accident, on the night of October 9, 1952, he observed a freight train pass through Sturgeon; that the light on the wigwag was not in operation; that about a week or ten days before the accident occurred he observed a train pass over the crossing; that the light on the wigwag was not in operation.

Mr. Palmer observed that the light was not in operation on the night of the accident, an hour or so after the accident occurred. Mr. Roberts, while the train that caused the casualty was still on the track, noticed that the light was not working.

Mr. Smith, the engineer operating the train at the time the casualty occurred, stated that the train was scheduled to leave Moberly at

6 :48 p.m. and arrive at Sturgeon at 7 :00 p.m.; that the train actually left at 7 :00 and arrived at 7 :05 or 7 :06; that the diesel motored engine was equipped with whistle, bell, headlight and Mar's light, the latter oscillating and throwing its beams to the front and to the side; that the speed at Sturgeon was 78 miles per hour; that there are no slow orders for Sturgeon; that he still travels through Sturgeon at 78 miles per hour; that the maximum speed permitted is 78 miles; that when he observed the Grace automobile the engine was probably 75 feet from the crossing; and that he applied emergency brakes before the collision occurred.

Mr. Schmidt, the fireman, stated that the distance from Moberly to Sturgeon is 12 to 14 miles.

Plaintiff's case was submitted under two verdict-directing instructions, P-1 and P-5. Instruction P-1 was directed solely to liability of the Wabash Railroad Company. After hypothesizing facts not here in dispute, it further declared: "* * * *, and if you further find and believe from the evidence, that, at the time and place in question, the defendant, Wabash Railroad Company, its agents, servants, employees operated said train at a high, dangerous and excessive rate of speed under the circumstances then and there existing; and [507] if you further find and believe from the evidence that, at said time, there was an ordinance in force in the City of Sturgeon prohibiting the running of trains at a greater speed than six (6) miles per hour in said City of Sturgeon and that the defendant, Wabash Railroad Company, its agents, servants and employees, did, at said time and place, run its engine and cars at a greater speed than six (6) miles per hour, and if you further find and believe from the evidence that defendant Wabash Railroad Company did install and maintain an automatic warning light at said crossing and that said automatic warning had been maintained by said defendant, if you so find, for sufficient length of time for persons traveling upon and along said Ogden Street to rely on said sign to warn them of the approach of any train or trains on said railroad track at said crossing, and if you further find and believe from the evidence that the defendant, Wabash Railroad Company, negligently and carelessly permitted said automatic warning light to be and remain out of order and repair, and that same would not operate, and that said automatic warning light had been in such condition for a sufficient length of time for said defendant, by the exercise of ordinary care on its part, to have discovered that said automatic signal light was in such condition, and to have repaired the same prior to said collision, and if you further find that the said Oda Grace knew defendant had installed and had been maintaining said automatic warning light, and relied thereon, and if you further find that such acts and failures, and each of them if you so find, were negligence on the part of the defendant, Wabash Railroad Company and if you further find and believe from the evidence then as a direct

and proximate result of such negligence on the part of said defendant, if you so find, said railroad train did collide with the automobile in which the said Oda Grace was riding, and that as a direct and proximate result of said collision the said Oda Grace was injured and that she died as a direct and proximate result of such injuries, if you so find, * * * then your verdict shall be for the plaintiff and against the defendant, Wabash Railroad Company."

Instruction P-5 was addressed solely to liability of the defendants Smith and Schmidt and, in terms substantially as embodied in Instruction P-1 above, directed a verdict against them if the jury found they operated the train at an excessive rate of speed in violation of the ordinance. It made no reference to the wigwag signalling device.

At the instance of defendants, the trial court, by Instruction N, directed the jury that Mrs. Grace "while riding in the automobile involved in the collision was required to exercise ordinary care and prudence for her own safety as said automobile approached the crossing in question and her failure, if you find she did so fail, to exercise that degree of care and prudence that you believe that a person of ordinary care and prudence would have exercised under the same and similar circumstances in observing the wigwag, hearing or seeing the approach of the train and hearing the crossing alarm was negligence that directly contributed to her death then your verdict shall be for the defendants." At plaintiff's request, the court instructed the jury that the burden of proving contributory negligence of Mrs. Grace was upon defendants.

Forms of verdict were given to the jury for its use in returning a verdict, among which was a form for its use if it found against the Wabash and in favor of Smith and Schmidt. As stated, that was the verdict agreed upon and returned by the jury.

The opinion of the Court of Appeals with much logic, and supported by respectable authority, concludes that the predetermined schedule fixed by the railroad for the operation of its train from Moberly to Sturgeon, a distance of 12 to 14 miles, within 12 minutes, constitutes negligence on the part of the railroad for which it is liable independent of its liability under the doctrine of *respondeat superior*; that the pleadings and evidence definitely warranted such a submission; [508] and that it is immaterial whether the defective wigwag signalling device constituted a separate or concurring ground of negligence under the evidence.

Defendant challenges that conclusion asserting that negligence of the railroad, independent of that of its servants, was not pleaded and that, if it were, the law of Missouri does not recognize the doctrine as declared in cases from other states cited in the Court of Appeals decision. Upon consideration of the whole record, we have concluded that even though the pleadings would admit of submission of the case upon the theory adopted by the Court of Appeals, yet it was not in

fact tried or submitted upon that theory. But, we are further convinced that the case was properly tried and submitted upon the theory that the railroad was liable for the negligent operation of its train by its servants at an excessive rate of speed under the doctrine of *respondeat superior* combined and concurring with its independent negligence in maintaining its signalling device in a defective condition, as hypothesized in Instruction P-1; and that a submissible case was made against it upon that theory, notwithstanding the finding of the jury that negligence of the servants in operating the train at an excessive speed did not, in and of itself, warrant a finding against them. This, for the reasons following: The evidence that the railroad, by its servants, negligently operated the train at an excessive rate of speed is clear and both the railroad and they are liable therefor, unless Mrs. Grace was guilty of contributory negligence; the evidence does not show Mrs. Grace guilty of contributory negligence as a matter of law; the jury reasonably could find she would have been guilty of contributory negligence had she not been deceived as to the approach of the train by the failure of the signalling device to display its customarily swinging red light when trains were approaching the crossing; Smith and Schmidt, although negligent in operating the train at an excessive speed, were not chargeable with any negligence attributable to maintenance of the signalling device and, therefore, not liable because Mrs. Grace would have been guilty of contributory negligence but for the assurance given her by the non-functioning light on the wigwag that the car in which she was riding could enter upon the crossing in safety; but that the railroad, chargeable with both acts of negligence was liable, because its independent negligence absolved her of contributory negligence as to it. We will undertake to amplify and justify these conclusions.

The evidence, including photographs introduced, shows that the main business district of Sturgeon lies immediately north of the crossing. It was unquestionably a dangerous one; defendant so recognized it by the installation of the wigwag signalling device equipped with a red light. Such recognition of its duty to install the device clearly imposed upon defendant the further duty to keep the red light thereon in good working condition so that the travelling public approaching the crossing would not be led to believe it safe to enter upon it when the light was not functioning. Bachman v. Quincy, O. and K. C. R. Co., 310 Mo. 48, 274 S.W. 764, 767; Dehn v. Thompson, Mo.App., 181 S.W. 2d 171, 174. If the red light was not functioning as Mr. and Mrs. Grace approached the crossing, that fact amounted to implicit assurance that the crossing could be made in safety. Mullis v. Thompson, 358 Mo. 230, 213 S.W. 2d 941, 944 [1, 2]. The evidence is sufficient to warrant a finding by the jury that Mr. and Mrs. Grace were familiar with the red light on the device. Sturgeon was their shopping, banking and church center. They went

over this crossing to enter the city for these purposes and to go through the city to visit their daughter who resided north thereof at least once each week for many years. It is a matter of common knowledge that under such circumstances they would become familiar with the signalling device and the swinging red light thereon and that they would come to rely upon it when entering upon the crossing. The evidence also warrants a finding that the red light on the device was not functioning when the train which killed Mr. and Mrs. Grace went over it, [509] and that it was not functioning on the morning of or the morning before the collision. The jury could also find that, in the exercise of ordinary care, defendant should have known of the defective condition in ample time to have repaired it before the train here involved went over the crossing or to have taken other precautionary measures such as placing a watchman thereat. We hold that a submissible case was made against the defendant Wabash upon its negligent failure to properly maintain the signalling device. (This conclusion also disposes of defendant's contention that the trial court erred in refusing Instruction C withdrawing the issue of the defective signalling device from the jury; and its further contention that Instruction P-1 was erroneous in submitting such issue.)

The operation of defendant's train over the Ogden Street crossing at a rate of speed in excess of the limits prescribed by the ordinance constituted negligence as a matter of law. Ruenzi v. Payne, 208 Mo.App. 113, 231 S.W. 294, 296; Todd v. St. Louis-San Francisco R. Co., Mo.Sup., 37 S.W. 2d 557, 558; Mullis v. Thompson, 358 Mo. 230, 213 S.W. 2d 941, 946. Obviously, the jury could find that defendant's negligent speed was a proximate cause of Mrs. Grace's injuries, unless she was guilty of contributory negligence. Cases, supra.

The burden of proving contributory negligence of Mrs. Grace was upon defendants unless it was otherwise shown. We think that the evidence does not show her to be guilty of such negligence as a matter of law. In the first place, it does not disclose which of the two, Mrs. Grace or her husband, was driving the car in which they were riding. (Leo Grace, aged 47, son of Mr. and Mrs. Grace, testified that Mrs. Grace "did drive a car, but not when father was with her." The court, upon motion of defendants, struck the answer.) Consequently, she may have been a mere passenger, and it must follow that she cannot be charged with the degree of care required of an operator. Her conduct, therefore, must be determined as though she were a passenger. There is no alternative. So assuming, the most she could do would be to note the danger, warn her husband, if he did not see or hear it, and urge him to stop; or she or her husband, or both of them, might have been deceived into a sense of security by reason of the non-functioning of the red light on the wigwag device. Mullis v. Thompson, supra. The question of her negligence was one

for the jury. Miller v. Union Pacific R. Co., 54 S.Ct. 172, 173 [5], 290 U.S. 227, 233, 78 L.Ed. 285, 289. But it also is clear that the facts and circumstances in evidence did present a jury question as to her contributory negligence. Miller v. Union Pac. R. Co., supra, l.c. 174; Southern Pac. Co. v. Wright, (C.C.A.) 248 F. 261, 264; State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, 143 S.W. 2d 233, 239.

 We may at this point also note and dispose of defendant's contention that the sole cause of the collision and Mrs. Grace's injuries was the negligence of the driver of the car in which she was riding, and that the court erred in refusing to render judgment for it on that ground. In support of that contention defendant cites Jurgens v. Thompson, 350 Mo. 914, 169 S.W. 2d 353, 356. The issues and facts in that case are in no wise analogous to the issues and facts here under consideration. In the case of Miller v. Union Pac. R. Co., supra, the court considered a situation (assuming the passenger status of Mrs. Grace) quite similar to the instant case, and therein held that contributory negligence of the automobile operator would not interrupt the sequence of events set in motion by the negligence of the defendant railroad or insulate its negligence from the accident, but would concur therewith so as to constitute in point of time and in effect what was essentially one transaction, and that the railroad was liable to a passenger in the car to the same extent as though the collision had been caused by its negligence alone. We agree with that holding.

 We hold that the jury was justified in finding that although Mrs. Grace would [510] have been guilty of contributory negligence had not the failure of the red light to function amounted to an assurance it was safe to enter upon the crossing; and that, therefore, the engineer and fireman, though guilty of negligence in operating the train at an excessive speed, should be exonerated from liability, but that the railroad, whose negligence in maintaining the defective device relieved her of contributory negligence, was liable because of its combined and concurring specified acts of negligence.

The judgment is affirmed.

*Leedy*, C.J., *Dalton*, *Hyde* and *Westhues*, JJ., and *Cave*, Special Judge, concur.