**Marle KLECKA, Appellant,**

**v.**

**Evelyn GROPP, Respondent.**

**No. 44246.**

Supreme Court of Missouri,

Division No. 1.

April 11, 1955.

Motion for Rehearing or to Transfer to

Court en Banc Denied May 9, 1955.

Lyng, MacLeod & Davidson, Russell N. MacLeod, St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary & Carter, G. W. Marsalek, St. Louis, for respondent.

DALTON, Presiding Judge.

Action for $15,000 damages for personal injuries sustained on October 8, 1951, about 7:20 a. m., when plaintiff, a pedestrian, and an automobile operated by defendant on Chippewa Avenue in the City of St. Louis came into collision at the southeast corner of the intersection of Chippewa and Compton Avenues. The cause was submitted solely upon humanitarian negligence in failing to stop and in failing to warn. Verdict and judgment were for defendant. Plaintiff has appealed and assigns error on the giving of defendant's instruction 3 for the reasons hereinafter stated.

Chippewa Avenue is an east-west street in the City of St. Louis that intersects Compton Avenue, a north-south street. Both streets are 36 feet wide with a 12 foot sidewalk area on each side. The sidewalk areas at the four corners of the intersection are rounded. Both streets are practically level and the intersection is marked for a four-way stop. The streets were dry with brick surfaces. There was a double line of street car tracks on Chippewa and the south rail of the eastbound tracks was 10.4 feet from the south curb line.

On the morning in question, plaintiff, a married woman 60 years of age, who resided a half block south of Chippewa, left her home and walked north on the east side of Compton to the southeast corner of its intersection with Chippewa. There she saw a truck parked at the curb on Chippewa facing east with its rear in or at the east side of the crosswalk. Plaintiff stopped at the curb and looked west along Chippewa, to her left, for eastbound traffic and saw none except a bus taking on or discharging passengers at the southwest corner of the intersection. She could not see east, to her right, because of the truck, so she stepped off the curb and stopped again 2 to 4 feet back of the truck and 3 or 4 feet north of the south curb line of Chippewa, but she was not out as far as the outer edge of the truck. While in this position she looked to her left again and saw that the eastbound bus was still at the

southwest corner of the intersection. She then looked to the right, but could not see "all the way down" Chippewa on account of the truck. She did see several automobiles moving west and stopping at the stop sign. She waited back from the edge of the truck for a break in the westbound traffic so that she could cross Chippewa to the northeast corner of the intersection. She thought it too dangerous to go to the center of the street until traffic cleared. She waited some fifteen seconds and was still looking to the right along the left-hand edge of the parked truck, when she was struck and knocked down. She did not see the automobile that struck her, until after it hit her. She had not moved from her position back from the edge of the truck before she was struck. She did not hear any horn. After she was down, she saw the automobile that had hit her. It had stopped at an angle headed north and east with the front wheels, the right front wheel on the "trolley tracks" and the back wheels were to her left. The automobile had entered Chippewa from Compton. Plaintiff heard defendant say she didn't know she hit anybody. Plaintiff sustained injuries to her chest, right leg, left hip, back and to an elbow. The injury to her right leg was between the knee and ankle on the inside.

Plaintiff also offered evidence tending to show that, if an automobile traveling north on Compton, and intending to turn right on Chippewa, stopped at the stop sign before entering Chippewa and then started up adjacent to the east curb of Compton and followed the rounding curb to the left, it would travel 17 or 18 feet to reach a point approximately 4 feet north of the south curb of Chippewa at the crosswalk. From a plat in evidence a jury could infer and find that the point where plaintiff said she stopped in the crosswalk on Chippewa to the rear of the truck could still be within the pathway of an automobile entering Chippewa from Compton and turning to the right, as above mentioned.

Plaintiff further offered the testimony of an expert witness to the effect that on the turn of a 1940 Chevrolet automobile, such

as was operated by defendant, the maximum tracking of the back wheels inside the tracking of the front wheels would be about one and one-half feet; that the average width of industrial trucks was about 96 inches and the width of a panel truck about 6½ feet; that the braking distance of a motor vehicle, such as the Chevrolet, at 5 miles per hour was 1.4 feet; that the distance covered at said speed in the average reaction time was 5½ feet; and that the total stopping distance at 5 miles per hour would be less than 7 feet.

Plaintiff offered certain admissions by defendant against interest from a deposition wherein defendant had testified that, on October 8, 1951, her automobile was in good condition; that there was no rain, ice or snow and the streets were dry; that as defendant drove north on Compton Avenue she had pulled out and around a truck, which had double parked on Compton near the intersection, and when defendant entered Chippewa her car was not completely on her own side of Compton, but a foot across the center line; that defendant stopped at the crosswalk before entering Chippewa; that as defendant "was going to pull out", she saw plaintiff "standing where she was standing"; that plaintiff was "standing there at the back of the car, * * * she wasn't against the car, she was standing a distance, but just beside it * * * behind the car, yes, a couple of feet away from it, that is, in the street"; that with reference to a line extended back * * * right along the side", plaintiff was about even with the left-hand side of the car" (plaintiff identified this vehicle as a truck); that as defendant "was coming around the corner" she saw plaintiff "look east, west, and then turn to the east again"; that she also saw plaintiff when plaintiff was 9 or 10 feet in front of her car; that the speed of defendant's automobile was about five miles per hour when she first saw plaintiff; that when making the turn defendant intended to drive within about 2 feet from plaintiff; that, if the collision had not happened, defendant's automobile would have cleared plaintiff "a

foot or a foot and a half, between 1 and 2 feet"; that defendant did not sound her horn; and that plaintiff "was standing just beside the car." Defendant further testified that she did not see the collision, since plaintiff was past her vision when the collision happened; and that, when defendant told a police officer that plaintiff walked into the side of the car, plaintiff denied it and said defendant hit her.

Defendant in her own behalf testified about as follows: That on October 8, 1951 about 7:20 a. m., she drove north on Compton Avenue to take a Miss Powell (now Mrs. Hines) with her; that her automobile was in good condition; that she stopped at the stop sign on Compton at Chippewa; that she saw plaintiff standing in the street in the crosswalk across Chippewa when she (defendant) started forward to make a right turn; that plaintiff was standing back of a vehicle parked "pretty close to the corner"; that plaintiff looked east and west, and then turned her head back and could have been looking east or ahead; that at that time there was automobile traffic west and east; that, when plaintiff turned her head and looked forward or to the east, defendant's automobile "was pretty close to her by then"; that at that time plaintiff "wasn't standing outside the edge of * * * wasn't past the parked car", but "was close enough she could see east" and was out so she could see Chippewa; that plaintiff was between defendant and the parked car; that defendant "was starting to make" her turn and because plaintiff "was standing perfectly still" and had looked each way, defendant felt safe to go ahead; that defendant did go ahead and made a right turn and headed east on Chippewa; that the front end of defendant's automobile completely passed plaintiff; that the left front wheel of the automobile was between the eastbound street car tracks; that on account of some movement at the side of defendant's automobile she put on the brakes and stopped and then saw plaintiff at the back wheel; that defendant stopped her car in 4 feet; that she had not seen plaintiff move; that at the time the

right front fender of the car was passing plaintiff there was "one and a half to two feet" between plaintiff and the front fender; that she (defendant) was proceeding at 5 miles per hour; that she did not sound her horn; and that when defendant looked at plaintiff's leg she was under the impression that plaintiff had stepped into the car, since the injury was on the inside of the right leg.

Defendant also offered a police report to the effect that plaintiff "stated she observed a Chippewa bus coming up the street and she started from the curb to catch same and suddenly she was struck by the above auto."

Defendant offered the deposition of Mrs. Hines, the lady who was her passenger at the time of the collision. The testimony of this witness tended to show that defendant came by for her because "it was icy"; that defendant drove north to Chippewa and stopped at the crosswalk and then turned to her right; that plaintiff was then standing on the sidewalk on the east side of Compton, facing north and looking down east on Chippewa; that, after defendant had made her turn and proceeded about 15 feet on Chippewa at between 20 and 25 miles per hour, the witness saw plaintiff's reflection sort of back of the car window, and saw plaintiff hit the back window and fall backward; that just after defendant had made the turn and was down Chippewa some 10 feet, she heard a thud; that she never saw plaintiff in front of defendant's automobile; that when plaintiff fell, her leg went under the automobile in front of the back wheel and against the tire; that the automobile was stopped at once; that plaintiff then said she was looking at her bus and didn't pay any attention to where she was going; that, when defendant made the stop at Chippewa, plaintiff was standing on the sidewalk and witness didn't see her step off the curb; that defendant was driving 8 to 10 feet out from the curb on Chippewa and was driving in the street car tracks when plaintiff was hit; that the automobile was stopped on the eastbound street car tracks; and that she heard no horn sounded.

Instruction No. 3, of which plaintiff-appellant complains, is as follows: "The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence plaintiff was standing in Chippewa Avenue near the southeast corner of its intersection with Compton Avenue, looking eastward at westbound traffic, and if you find that defendant operated an automobile northwardly on Compton Avenue, stopped at Chippewa, and turned eastwardly into Chippewa, and if you find that as defendant's car passed in front of plaintiff, plaintiff moved or stepped in a northwardly direction, and in so doing (if you so find) walked into and against the right side of defendant's automobile; and if you find that in looking eastward while starting to walk north (if you so find), plaintiff failed to exercise ordinary care for her own safety, and if you further find that such failure, if any, on plaintiff's part, was the sole cause of the collision mentioned in evidence and the sole cause of plaintiff's injury, if any, and that defendant was not negligent in any respect set forth in Instruction No. 1, then your verdict should be in favor of defendant Evelyn Gropp."

Appellant contends the instruction is erroneous because (1) no "sole cause" situation was presented by the evidence, since defendant's own testimony and the reasonable inferences therefrom were sufficient to show defendant's humanitarian negligence and to make out a submissible case for plaintiff against defendant; (2) the instruction assumed that plaintiff moved and that such movement was from a place of safety into a position of danger; (3) the instruction is misleading because it allows the jury to consider the contributory negligence of plaintiff as a defense to a humanitarian negligence submission; and (4) the instruction being an erroneous verdict directing instruction, the

error could not be cured by reference to other instructions.

Respondent, on the other hand, contends that defendant's evidence was at a distinct variance from plaintiff's testimony and presented a "sole cause" situation; that defendant was entitled to submit an affirmative defense as submitted by Instruction No. 3; that the evidence supports the hypothesis submitted in the instruction; that "contributory negligence" is not submitted as a defense; and that the instruction is in proper form. Respondent also relies on certain portions of the testimony of her witness, Hines, which are in conflict with her own testimony, however, a party to an action is conclusively bound by his own personal testimony with like effect as by an admission in his pleadings. Shirts v. Overjohn, 60 Mo. 305, 308; Holmes v. Leadbetter, 95 Mo.App. 419, 425, 69 S.W. 23; Shea v. Seelig, 89 Mo.App. 146, 149; McCoy v. Home Oil & Gas Co., Mo.App., 60 S.W.2d 715, 724(6); Ireland v. Shukert, 238 Mo.App. 78, 177 S.W.2d 10, 17 (15). Respondent further insists that there was no duty to warn under the humanitarian doctrine because "plaintiff was to all intents and appearances in a position of safety, alerted to traffic conditions by looking east and west, and * * * about half the length of defendant's car had passed plaintiff before the collision occurred * * * some 8 or 10 feet out in the street." The instruction, however, required no such finding of facts.

Since we have reached the conclusion that Instruction No. 3 is prejudicially erroneous and the cause will have to be retried, it will be unnecessary to rule the question of the sufficiency of the evidence to show a sole cause situation. Other facts may appear upon another trial of the cause. On this record, a sole cause situation does not clearly appear from defendant's own testimony. It does not appear that the place where plaintiff stood was a position of safety and outside of the pathway of the rear portion of defendant's automobile as defendant was making her turn

to the right. Nor does it appear that plaintiff's action, conduct and general appearance were such as to indicate to a person in the exercise of the highest degree of care that plaintiff was aware of defendant's approach from the south and west (from plaintiff's left and rear), even though plaintiff may have looked to the west. This is particularly true where other facts and circumstances indicated that plaintiff was intending to cross Chippewa when traffic had cleared. Further, it appears that defendant was expecting to drive her automobile within a foot or two of the place where plaintiff was standing and while plaintiff was looking in the opposite direction from which defendant was approaching.

As to Instruction No. 3. While we agree that the evidence considered favorably to defendant adequately supports the specific facts submitted by the instruction, the facts even if true, do not support a sole cause conclusion, nor do they constitute a defense to the negligence charged and submitted by plaintiff. The instruction authorized and permitted a finding of "sole cause" upon a finding of facts that were not inconsistent with, nor contrary to the facts and directions contained in plaintiff's Instruction No. 1, which directed a verdict for plaintiff upon a finding in part as follows: "* * * that at and prior to the time of said collision aforesaid, plaintiff was stopped and in a position of imminent peril of being struck and collided with by defendant's said automobile and was oblivious of said peril, if you so find, and that defendant saw, or by the exercise of the highest degree of care, could have seen plaintiff upon the crosswalk of said street and highway there, in a position of imminent peril of being struck and collided with by defendant's said automobile, and that plaintiff was oblivious thereof, if you do so find, in time thereafter for the defendant, by the exercise of the highest degree of care, with the means and appliances then at hand, and with reasonable safety to defendant's said automobile, the occupants thereof, other persons and prop-

erty thereabout, to have stopped said automobile and to have sounded a warning signal of its approach, proximity, movement and turn, and by so doing, defendant could thus and thereby have avoided striking plaintiff, if you do so find, * * *."

■ From plaintiff's evidence, corroborated as it is by defendant's own testimony, a jury could reasonably infer and find every essential element of plaintiff's humanitarian negligence submission against defendant.

Instruction No. 3 is based upon plaintiff's contributory negligence in walking into the side of defendant's automobile and it permitted a finding of "sole cause" upon facts constituting contributory negligence, but no facts were required to be found which excluded defendant's liability under plaintiff's submission even if plaintiff were negligent and walked into the side of defendant's automobile. In other words, the instruction did not purport to hypothesize a factual situation under which the humanitarian negligence relied upon in plaintiff's submission could not apply, nor did it require a finding that plaintiff was standing at a point in the street where she was in no position of danger of being struck by defendant's automobile as in Steffen v. Ritter, Mo.Sup., 214 S.W.2d 28, 30.

■ It is well settled that contributory negligence constitutes no defense to a humanitarian negligence submission. If an instruction is so drawn that a jury probably would understand that, if plaintiff were guilty of specific negligence contributing to cause his injury he could not recover, the instruction is erroneous. Catanzaro v. McKay, Mo., 277 S.W.2d 566, and cases therein cited. Of course where facts, which would sustain a finding of contributory negligence, are such that a finding of such facts excludes and disproves the circumstances relied upon to sustain the plaintiff's humanitarian submission, an instruction submitting such facts may be proper and authorize a sole cause finding.

In this case the instruction did not hypothesize facts showing a position of peril arising after defendant had passed plaintiff in a position of safety, nor did the facts show a situation where imminent peril arose after it was too late for defendant to act. Further, the facts submitted in defendant's instruction did not exclude defendant's humanitarian negligence as a concurring cause of injury and did not provide a basis for a sole cause finding. Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373, 377.

Respondent cites Jurgens v. Thompson, 350 Mo. 914, 169 S.W.2d 353, 357, where cases are cited to the effect that before a defendant can be entitled to a sole cause instruction, he must have evidence which tends to prove facts that will sustain it; and that sole cause means the act or negligence of the plaintiff or a third party directly causing the injury *without any concurring or contributory negligence of the defendant*. In this case the defendant's own testimony does not exclude her own humanitarian negligence as a concurring cause of plaintiff's injury. While defendant is entitled to submit an affirmative defense on her own evidence, such evidence must disclose facts constituting a defense and the facts submitted must necessarily destroy the basis of plaintiff's action.

■ Since Instruction No. 3 did not hypothesize nor require a finding of facts which excluded defendant's humanitarian negligence as alleged and submitted, the facts hypothesized constituted no defense to plaintiff's action and provided no proper basis for the "sole cause" conclusion submitted by the instruction. The instruction was therefore prejudicially erroneous. Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853, 859; State ex rel. Snider v. Shain, 345 Mo. 950, 137 S.W.2d 527, 531; Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60, 64; Stanich v. Western Union Telephone Co.,

348 Mo. 188, 153 S.W.2d 54, 56; Johnson v. Cox, Mo.Supp., 262 S.W.2d 13, 14.

The judgment is reversed and the cause remanded.

All concur.

On Motion for Rehearing.

PER CURIAM.

On motion for a rehearing respondent complains of the statement in the opinion that instruction No. 3 "authorized and permitted a finding of 'sole cause' upon a finding of facts that were not inconsistent with, nor contrary to the facts and directions contained in plaintiff's instruction No. 1 * * *."

Instruction No. 1 submitted that "plaintiff was stopped and in a position of imminent peril of being struck and collided with by defendant's said automobile and was oblivious of said peril * * *," while instruction No. 3 submitted a finding that "plaintiff was standing on Chippewa Avenue near the southeast corner of its intersection with Compton Avenue, looking eastward at westbound traffic, and * * * that as defendant's car passed in front of plaintiff, plaintiff moved or stepped in a northwardly direction, and in so doing * * * walked into and against the right side of defendant's automobile * * *." Respondent insists that one instruction required a finding that plaintiff was "stopped" in the street while the other required a finding that "plaintiff was *moving forward* at the time of the collision"; and that "this conflict represents the gist and gravamen of the entire case."

We do not agree. Plaintiff's imminent peril was the essential basis of her submission and defendant's submission was not inconsistent therewith. The facts submitted by the two instructions are not inconsistent because the facts submitted by instruction No. 3, as to plaintiff's movement forward under the circumstances shown, only tended to confirm plaintiff's submission of obliviousness and imminent peril as submitted by plaintiff's instruction No. 1.

The motion for rehearing is overruled.