Manuel C. SUAREZ, Appellant,

v.

Guy A. THOMPSON, Trustee, Missouri Pacific Railroad Company, a Corporation, Respondent.

No. 44641.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1955.

T. J. Gentry, Little Rock, Ark., Koenig, Dietz & Mason, William L. Mason, Jr., St. Louis, for appellant.

Harold L. Harvey, Oliver L. Salter, Donald B. Sommers, St. Louis, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff's wife, Violet Suarez, was fatally injured when her body went through an open exterior vestibule door of a day coach on defendant's southbound train near Bismarck, Missouri, on which she was riding as a passenger. Plaintiff, by this action, seeks to recover $15,000 for her wrongful death, alleging that said door was under the exclusive operation and control of defendant; that it was the duty of defendant, for the safety of passengers, to keep said door closed while the train was in motion; that defendant negligently "caused, allowed and permitted [said door] to be and remain open and unsecured"; that while moving

through said vestibule Mrs. Suarez was caused by ordinary train motion or misstep to go through the open door and fall to the ground.

Defendant denied the negligence charged and pleaded that decedent's injuries were caused by her negligent or intentional acts in opening said door and attempting to leave the train when it was in motion.

At trial on the merits, the court sustained defendant's motion for a directed verdict filed at the close of plaintiff's evidence and, upon return of the verdict, entered judgment for defendant. Plaintiff, after unsuccessful motion for new trial, appealed. Defendant does not here challenge the sufficiency of the petition nor the right of plaintiff to bring the action. The sole question is whether there was substantial evidence that the door was negligently left open by defendant's servants.

Mrs. Suarez boarded defendant's passenger train No. 7 at St. Louis, Missouri, at 12:45 a. m., on October 10, 1950, enroute to her home in Little Rock, Arkansas. Two day coaches, T.P. Car No. 1507 and an I.G.N. Car, constituted a part of the train, the T.P. car being the forward (south) car of the two. The rear exterior door on the east side of the T.P. car is the door involved in this case. The door in question was a single door (not divided), 6′ 8″ in height and 2′ 9″ in width. Two latches secured it when closed. One of these latches was on the left side (when the door was faced from the interior of the vestibule) at the normal height of a door handle and the other was directly above it, 5′ 8″ from the bottom of the door. Both latches worked on spring mechanisms. In order to release the door, both latches had to be turned simultaneously and held turned until the door was pulled toward the interior. The door could then be opened inward until it stood at 45 degrees from its closed position. When so opened, it would remain in place against the rear coach wall. The vestibules on the T.P. car and on the I.G.N. car were each slightly in excess of four feet in depth, so that the distance from the north door of the T.P. car to the south door of the I.G.N. car was in excess of 8½ feet.

Henry Williams testified in behalf of plaintiff. He is an employee of defendant and was porter on train No. 7 on the night Mrs. Suarez came to her death. Mr. Missey was the conductor. It is one of witness' duties to keep the doors on the train closed. Passengers are not permitted to open exterior vestibule doors when the train is in motion. Only the conductor and witness had that right. Mrs. Suarez was first seated in the I.G.N. (rear) car, but soon went forward into the T.P. car, at which time witness "noticed her acting kind of strange". The train was scheduled to arrive at De Soto at 1:55 a. m., and at Bismarck at 3:00 a. m. While the train was at De Soto, Mr. Missey opened the east rear exterior vestibule door of the T.P. car (the door here involved). When the train left De Soto, witness went to the T.P. car. Witness watched Mrs. Suarez after leaving De Soto. She started to the baggage car ahead (south) of the T.P. car, and witness followed her because she was acting strange. She came back and sat down in the T.P. car where some men were playing cards. Shortly before reaching Bismarck, witness heard she had disappeared from the train and went to the rear of the T.P. coach and there saw the east rear exterior vestibule door of the T.P. car open.

On cross-examination, witness testified: Mr. Missey opened the door in question at De Soto to give a message to the crew of Train No. 8. Mr. Missey then closed the door and it was closed when the train left De Soto. Witness was standing by Mr. Missey when Mr. Missey closed it. The vestibule doors can be opened by passengers; they are not kept locked. Mrs. Suarez talked to the men playing cards in the T.P. car. She said "the police is after her or something. Everybody was staring at her. * * * It seemed like she was afraid of something."

Wilbur Johnson Brown testified in behalf of plaintiff. He is a telephone clerk in the employ of defendant. He boarded train No. 7 at Tower Grove Station in St. Louis

en route to Texarkana on the night Mrs. Suarez came to her death. Witness first saw her in the (rear) I.G.N. car. She later went forward into the T.P. car. Witness also went forward into that car. While witness stood near the rear of the T.P. car, Mrs. Suarez said she wanted to talk to him, to which he replied, "All right." Intending for her to follow him, he turned, opened the rear door leading out of the T.P. car (which has a device to slow its closing), went northward across the vestibules of the T.P. car and the I.G.N. car, opened the south door leading into the I.G.N. car, pushed it inward and, holding the door open, stepped aside for Mrs. Suarez to enter ahead of him. At this juncture, he looked backward toward the T.P. car. Mrs. Suarez was gone. He had not seen her since he had turned to leave the T.P. car, at which time she was about one foot to his rear. When she did not appear to enter the I.G.N. car, witness looked beyond the buffers between the cars and saw that the east rear exterior vestibule door of the T.P. car was opened inwardly, in place against the rear wall of the coach. When witness was going through the vestibules to open the door of the I.G.N. car, he did not look to see if the latches on the east exterior door of the T.P. car were fastened, but the door was not standing open.

On cross-examination, witness said: He would have noticed and felt the wind if the door had been open as he went through the vestibules; to the best of his knowledge it was not open. The train was going around 45 miles per hour. His conversation with Mrs. Suarez, who was a stranger to him, began when she asked why he stared at her, which he disclaimed doing. Their conversation then ran in this wise: "She said, 'I was in St. Louis yesterday.' * * * So she said, 'You know what happened?' I said, 'No.' She said, 'The police stopped me.' I said, 'Well, I wouldn't worry about that too much. If you haven't done anything they won't do nothing to you.' She said, 'I would like to talk to you.' I said, 'O.K.'" It was then that he opened the T.P. car door to precede her

into the I.G.N. car. That was the last time he saw her.

Mrs. Suarez was found by railroad employees at dawn that morning lying east of the tracks approximately two miles north of Bismarck. She died that afternoon. Photographs taken after daybreak showed two footprints deeply impressed in the embankment immediately beyond the gravel ballast on the east side of the tracks and the earth plowed downward therefrom to the bottom of the embankment.

Plaintiff says a submissible case was made because: The undisputed evidence was that defendant's conductor opened the door at De Soto; the door was open when Mrs. Suarez went through it; it is presumed she did not open it; and it is presumed the door remained open from the time it was opened at De Soto until it was found open after her body passed through it.

Defendant says: "Plaintiff failed to sustain the burden of proving any act of negligence on the part of the defendant, because plaintiff's witness testified that the door in question was not allowed to be or remain open by any employee of defendant. The testimony is uncontradicted and plaintiff is bound thereby."

■ Plaintiff is not conclusively bound by the testimony of the porter, Williams, given on cross-examination, that conductor Missey, after opening the door, closed it before the train left De Soto, if there were other facts and circumstances or if there was testimony in the case that would warrant the jury in drawing a contrary inference. Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50 [1, 2]; Delay v. Ward, Mo.Sup., 262 S.W.2d 628, 633–634 [5, 6].

As plaintiff contends, two facts are unquestionably established, to wit: the door in question was opened for a temporary purpose at De Soto and it was open when Mrs. Suarez went through it near Bismarck. But these facts, standing alone, do not of themselves convict defendant of negligence and plaintiff does not proceed on that theory. His sole charge of negligence is that the conductor permitted the door to

remain open after opening it at De Soto. The testimony of plaintiff's witness Williams positively denies that fact and the testimony of his witness Brown tends to corroborate Williams. Therefore, unless the presumptions asserted by plaintiff are valid and do as a matter of law exist, then the testimony of Williams and Brown constitutes the only evidence in the case on the issue of defendant's negligence, and plaintiff is bound by it. Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626, 633 [11, 12]; Krause v. Laverne Park Ass'n, Mo.App., 240 S.W.2d 724, 727 [4, 5]; Lesch v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 258 S.W.2d 686, 689 [1]; Van Hook v. Strassberger, Mo.App., 259 S.W.2d 399, 405. We, therefore, address our attention to the asserted presumptions.

Plaintiff says it must be presumed that Mrs. Suarez did not open the door because she would have done so only with suicidal intent, and that we must indulge the strong presumption against such intent in the absence of substantial evidence to the contrary. We are not convinced, under the evidence here presented, that it is to be presumed that Mrs. Suarez would open the door only for the purpose of suicide. There was undisputed substantial evidence given by plaintiff's witnesses that Mrs. Suarez acted strangely, was restless and disturbed, and expressed a fear of the police whom she thought were pursuing her. Such evidence possibly would warrant an inference of flight rather than an inference of an attempted suicide. Unreasoning fear, we know, prompts desperate action.

■ But, more important is it to ascertain if, upon a showing the door was opened by the conductor at De Soto, a presumption arose that it remained open until Mrs. Suarez went through it. The law is clear that any such presumption disappeared from the case when Williams and Brown testified to the contrary. 31 C.J.S., Evidence, § 124, p. 738; Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 139–140 [1–4]. Of course, the fact that the conductor did open the door remained for whatever its evidentiary value might be. Michler v. Krey Packing Co., supra. What, then, in

relation to the issue of the door remaining open, is the evidentiary value of such fact?

"Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time. * * * In other words, it will be inferred that a given fact or set of facts, the existence of which at a particular time is once established in evidence, continues to exist so long as such facts usually do exist. The inference is extremely faint in connection with matters of intrinsic impermanency; and where a fact or condition is not reasonably continuous in its nature, there is no presumption of its continuance. * * * " 31 C.J.S., Evidence, § 124, pp. 736–738. See also Missouri Power & Light Co. v. City of Bucklin, 349 Mo. 789, 163 S.W.2d 561, 564; Jensen v. Logan City, 89 Utah 347, 57 P.2d 708, 717.

■ The evidence, although somewhat sketchy, leaves a clear inference, and it is a matter of common knowledge, that the exterior vestibule doors on passenger trains are usually kept open and unguarded only when the train is stopped. The evidence shows that the specific purpose in opening the door in question at De Soto was to enable the conductor to transmit a message to the crew of another train arriving at De Soto. Certainly then, the fact that the conductor opened the door for the aforesaid purpose while the train was stopped at the station, cannot, in the face of a custom of keeping it closed when the train was in motion, give rise to an inference that it remained open after the train left the station. If there is any inference to be drawn from the facts in evidence, it is that the door was closed before the train left De Soto.

■ There being no competent evidence from which it may be inferred that a servant of defendant negligently permitted the door to remain open, the judgment of the trial court should be affirmed.

It is so ordered.

All concur.