John E. SHEERIN, Appellant,

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation, Respondent.

No. 45110.

Supreme Court of Missouri,

Division No. 1.

March 11, 1957.

Motion for Rehearing or to Transfer to
Court en Banc Denied April 8, 1957.

John J. Kelly, Jr., Koenig, Dietz & Mason, William L. Mason, Jr., St. Louis, for appellant.

Leo C. DeVoto, Jr., St. Louis, Lloyd E. Boas, St. Louis, of counsel, for respondent.

HOLLINGSWORTH, Presiding Judge.

As John E. Sheerin, plaintiff herein, walked southward along the east sidewalk on Kingshighway Boulevard in the City of St. Louis and was crossing over defendant's east-west line of streetcar tracks at the point where they intersect Kingshighway, he was struck and injured by an eastbound streetcar as he was in the act of stepping clear of the track upon which the car was proceeding. This action to recover the sum of $15,000 for such injuries ensued. The cause was submitted to the jury upon the sole issue of defendant's humanitarian negligence in failing to so slacken the speed of its streetcar as to permit plaintiff to clear the track after defendant's operator saw or in the exercise of ordinary care could have seen plaintiff in imminent peril of being struck. The jury returned a verdict for defendant. Plaintiff has appealed and, in this court, urges but one point, namely: error in the giving of a sole cause instruction (No. 5) in behalf of defendant. Defendant contends, first, that the instruction was proper; second, that if it be erroneous, the error was "waived" by plaintiff's requested (and given) Instruction No. 6; and, third that in any event plaintiff failed to make a submissible case. Of course, if defendant's third contention is true, we need consider the case no further. Consequently, we give that aspect of the case our first attention and, in so doing, review the evidence from the viewpoint most favorable to plaintiff.

Kingshighway, extending north and south, is approximately 100 feet in width between the building lines on each of its sides. There is, however, a concrete sidewalk approximately 20 feet in width on

each side thereof, reducing its width to 60 feet from curb to curb. At the point here involved, it is intersected by defendant's right-of-way called the "Hodiamont Line", upon which are situate (on the north) defendant's westbound streetcar track and (on the south) defendant's eastbound streetcar track. The distance between the north rail of the westbound track and the south rail of the eastbound track is approximately 16 feet, made up of the distance of 4.845 feet between the rails of each track and the distance of 6.10 feet between the tracks. A building line, as it extends eastward from the northeast corner of the intersection of Kingshighway and defendant's right-of-way, is situate approximately 21 feet north of the north track. A concrete sidewalk extends eastward from Kingshighway along the area between said building line and defendant's westbound (north) track.

The casualty occurred at about 1:30–1:50 a. m., on January 10, 1953. Plaintiff, a carpenter, was then 35 years of age. The weather was fair, the street dry and the intersection was brightly lighted. Plaintiff (who throughout the evening had consumed a considerable quantity of intoxicating beverage) and Mrs. Lola Tennison left a tavern located about four doors east of Kingshighway, walked westward to Kingshighway along the sidewalk immediately north of defendant's westbound track, thence southward (with plaintiff on the outside) along the center of the 20-foot wide sidewalk on the east side of Kingshighway until they reached a point two feet north of the north rail of the westbound track. At this point, they stopped, plaintiff looked to the east, saw nothing, looked to the west and saw defendant's eastbound streetcar approach the west side of Kingshighway and come to a stop near the west edge of the sidewalk on that side of the street, approximately 90 feet west of plaintiff, and saw that a passenger was either entering or leaving the car. Plaintiff and his companion, without again looking to the right and at all times wholly oblivious of the approach of the car, with the purpose of crossing the tracks, continued southward at a "normal gait" along the center of the sidewalk until they were about to step clear of the eastbound (south) track along which the streetcar was proceeding, at which time plaintiff saw it practically upon him.

Plaintiff called to the witness stand defendant's operator who testified: The streetcar operated by him on the occasion in question weighed in excess of 36,000 pounds and was functioning perfectly. He stopped it with its front end 3 to 5 feet east of the west edge of the west sidewalk line of Kingshighway. After discharging one passenger and receiving another, he accelerated slowly until he reached a point 5 feet west of the center line of Kingshighway, at which time he ceased acceleration and thereafter "coasted". His speed never at any time exceeded 10 to 15 miles per hour as his car crossed Kingshighway. Just after passing the center line of Kingshighway, witness saw plaintiff for the first time. He was then standing in the center of the sidewalk on the east side of Kingshighway at a point between the rails of the westbound (north) track. At that moment plaintiff's back was toward the witness and he appeared to be talking to another person. Plaintiff suddenly started to "hustle" that person (Mrs. Tennison) across the street and into the car's path. Plaintiff's back was to the witness and plaintiff was using his arm and shoulder in "hustling" Mrs. Tennison "across the track". He was "swaggering speedily" and never at any time looked toward the streetcar after starting across the tracks. The witness did not start to apply his brakes until his car was three-fourths of the way across Kingshighway (15 feet west of the sidewalk and 25 feet west of the center line thereof, along which plaintiff and Mrs. Tennison were proceeding). Both plaintiff and Mrs. Tennison were actually south of the eastbound track when the collision occurred. Plaintiff was struck by a protrusion of the "front door division", which extended from $\frac{3}{4}$ to $1\frac{1}{2}$ inches beyond the south side of the car. Had plaintiff cleared that protrusion, he would not have been

struck. When witness was ¾ of the distance across Kingshighway (25 feet west of the path of plaintiff's travel), he applied all of the braking power at his command and succeeded in stopping the streetcar with its front end about 15 feet east of the point of collision. By the utmost use of his brakes he could stop the car when going at 10 miles per hour within about 35 feet and when going at 15 miles per hour within about 50 feet. In this instance, he actually stopped the car within 40 feet.

In support of its contention that no submissible case was made, defendant says that the evidence most favorable to plaintiff shows that plaintiff walked southward a distance of 17.84 feet (admittedly substantially correct) while the streetcar moved eastward a distance of 90 feet (admittedly substantially correct); that plaintiff's walking speed was 2.9 to 4.44 feet per second (citing Lang v. St. Louis-San Francisco Ry. Co., 364 Mo. 1147, 273 S.W.2d 270, 274); that the slowest of these speeds (2.9 feet per second) would require 6.1 seconds for plaintiff to walk the 17.84 feet; that in order for the streetcar to have struck plaintiff, it necessarily would have accelerated its speed from its stopped position at the rate of 4.8 feet per second, so that it would have been travelling 19.96 miles per hour when it reached the point of collision; and that, therefore, the collision could not have happened in the manner detailed by plaintiff.

■ The argument is, perhaps, theoretically correct but not entirely persuasive. The estimates of the speed at which plaintiff walked and the streetcar was running are subject to wide margins of error and are not conclusive. On the other hand, there is testimony and undisputed facts in the case which, in our opinion, make a submissible case of humanitarian negligence upon the grounds submitted. Under the evidence most favorable to plaintiff, the jury could have found he was oblivious of the approach of the streetcar from the time he saw it stop 90 feet west of him and was therefore in a position of immi-

nent peril from the time he began his entry upon and across the tracks and that, in the exercise of ordinary care, defendant's operator then and there could have seen and observed plaintiff's total lack of attention to the streetcar and realized his peril. The operator admitted that from the time he first saw plaintiff (the front of his car having "just passed" the center of Kingshighway) plaintiff's back was toward the car and plaintiff never thereafter looked toward the car, yet he made no application of his brakes until the car was three-fourths of the way across Kingshighway and 25 feet from plaintiff's path of travel. Now, plaintiff came within 1½ inches of clearing the overhang of the car. It is therefore obvious that had defendant's operator, in the exercise of ordinary care, seen plaintiff a moment sooner, as the jury could have found he should, and observed plaintiff's peril, as the jury could have found he should, and applied his brakes a moment sooner, as the jury could have found he should, thereby as a matter of course slowing the car a moment sooner, the collision would not have occurred. See Newman v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 43, 46; Newman v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 45, 46. And the mere fact that the testimony of defendant's operator to the effect that plaintiff was stopped between the rails of the westbound track instead of 2 feet north thereof, as testified by plaintiff, and that plaintiff "swaggered" hurriedly across the tracks instead of walking normally across them, as plaintiff testified, is not contradictory of the theory of plaintiff's case and does not destroy its submissibility; nor is he conclusively bound by it. On the other hand, plaintiff is entitled to the benefit of such of the operator's testimony as is favorable to him and not contradictory of an essential element of his right to recover. Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50; McCall v. Thompson, 348 Mo. 795, 155 S.W.2d 161, 164; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 634; Suarez v. Thompson, Mo.Sup., 283 S.W.2d 584, 586. Defend-

ant's contention that a submissible case was not made must be overruled.

■ The sole cause instruction (No. 5) of which plaintiff complains reads as follows:

"The Court instructs the jury that the plaintiff, John Sheerin, was, under the law, bound to exercise ordinary care and caution for his own safety at the time and place in question, that is such care as an ordinarily careful and prudent person would exercise under the same or similar circumstances.

"In this connection you are further instructed that if you find and believe from the evidence that, under all the circumstances shown in evidence, John Sheerin started from a standing position in or close to the center of the westbound tracks mentioned in evidence and walked southwardly in front of and in close and dangerous proximity to a moving street car then and there operating eastwardly on the Hodiamont Right-of-Way crossing Kingshighway Boulevard when John Sheerin saw, or in the exercise of ordinary care and caution could have seen that there was danger of being struck by the street car, if you so find, and could have avoided being struck by stopping after starting or by remaining stopped but failed to do so; and if you further find in so doing and in so failing John Sheerin failed to exercise ordinary care and caution for his own safety, and that such acts or such failure, if you so find, was the sole cause of the collision and whatever injuries, if any, John Sheerin sustained on the occasion in question, and that such alleged injuries, if any, were not due to any negligence on the part of the operator of the street car as set out in Instruction No. 2 herein, then, in that event, plaintiff is not entitled to recover and your verdict must be in favor of the defendant."

Instruction No. 2, referred to in the foregoing instruction, submits, as stated, humanitarian negligence of defendant in failing to slacken the speed of the streetcar so as to permit plaintiff to step clear of its path after the operator became chargeable with knowledge that plaintiff was in imminent peril.

We think Instruction No. 5 is prejudicially erroneous in several respects. In the first place, it obviously assumes that plaintiff was or reasonably appeared to be in a position of safety when defendant's operator first saw him between the rails of the westbound track. To the contrary, the only evidence in the case tended to show that plaintiff was intent upon crossing over the tracks and wholly oblivious of the dangerous approach of the streetcar from the moment he started from a position of safety 2 feet north of the westbound track until the moment he was struck, and that his position was such when the operator first saw him as to indicate his obliviousness. True, of course, the jury was not required to believe that testimony, but, in the absence of any other testimony or fact or circumstance showing to the contrary, defendant was not entitled to submit an affirmative finding that he was ever in a position of safety after entering upon the tracks. Clearly, the operator's testimony justified no such finding.

■ But, more prejudicial, we think, is the fact that the instruction is so worded as to leave a definite impression with the jury that plaintiff should be denied recovery if at any time after coming into a position of imminent peril and prior to being struck he, in the exercise of ordinary care, could have extricated himself from his perilous position; and this despite the humanitarian duty of defendant's operator to take whatever steps were reasonably available to slacken the speed of the car as soon as, in the exercise of ordinary care, he could have seen plaintiff in a position of imminent peril, without regard to negligence on the part of plaintiff. So, there-

fore, the jury probably would understand that even though the operator was negligent in failing to see plaintiff in a position of imminent peril upon the first reasonable appearance thereof and to thereupon slacken the speed of the car, yet, if plaintiff, in the exercise of ordinary care at any time thereafter and prior to being struck, could have extricated himself from his peril, defendant would not be liable. That is not the humanitarian doctrine on Missouri.[1]

In this connection, it may be argued that the "tail" on Instruction No. 5 requiring an additional finding that the collision was not due "to any negligence on the part of the operator of the streetcar as set out in Instruction No. 2" absolves it from the interpretation we have placed upon it. We think not. At best, the instruction tends to make contributory negligence of plaintiff the dominant issue in the case when the essential question for determination by the jury was defendant's humanitarian negligence. Contributory negligence constitutes no defense to a humanitarian negligence submission and we have repeatedly held to be prejudicially erroneous any instruction that injects such an issue into the case or that is so worded it may reasonably lead the jury to believe that if plaintiff's negligence contributed to his injuries he cannot recover. McCall v. Thompson, 348 Mo. 795, 155 S.W.2d 161, 166; Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, 570–571; Cunningham v. Thompson, Mo.Sup., 277 S.W.2d 602, 610; Klecka v. Gropp, Mo.Sup., 278 S.W.2d 790, 795.

This, of course, does not mean that where the evidence supports a finding that plaintiff's negligent act or omission was the sole cause of his injuries defendant may not submit a finding that such *evidence* was the sole cause thereof. But ordinarily, in the submission of such evidence, there can be no legitimate reason for any mention of negligence or any hypothesized finding that such evidence constituted negligence. Consequently, when an instruction predicated upon such evidence refers in the abstract to the duties imposed upon plaintiff by law or recites that failure on his part to exercise lawful care constitutes negligence or characterizes his acts or conduct as negligence or authorizes the jury to determine whether the conduct submitted constitutes negligence, the probability of prejudicial error is great. This for the reason that under the humanitarian doctrine negligence or non-negligence of the plaintiff is beside the point. The ultimate issue is defendant's negligence and generally it may be said that the safe submission of a defensive sole cause instruction in such a case is the hypothesization of the specific fact situation shown by the evidence to warrant a finding that such facts were the direct and proximate cause of the casualty and none of the acts or omissions (sufficiently identifying them) under which defendant's humanitarian negligence was submitted directly contributed to it in any degree. See Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, 747; Catanzaro v. McKay, supra; Klecka v. Gropp, supra.

---

1. It is the view of many writers that application of the doctrine of humanitarian negligence to persons in a position of discoverable peril (against defendants chargeable with a duty to maintain a lookout) frequently results in the unjust award of fully compensatory damages to grossly negligent plaintiffs from slightly negligent defendants. But so long as we continue to apply the harsh rule that any contributory negligence on the part of plaintiff, however slight, constitutes a bar to recovery of any damages for primary negligence on the part of defendant, however gross, the evils of the first may serve to offset the evils of the second. Of course, two wrongs do not make one right and the adoption of the doctrine of diminution of damages of a plaintiff or the apportionment of damages between counterclaimants on the basis of comparative negligence would seem to be clearly preferable. The problem is, perhaps, legislative rather than judicial. See the articles by Mr. Laurence H. Eldredge in the January 1957 issue and by Mr. David G. Bress in the February 1957 issue of the American Bar Association Journal.

Finally, defendant contends that plaintiff waived any error in Instruction No. 5 by the tender of Instruction No. 6. The latter instruction (given by the court) tells the jury that Instruction No. 5 is known in law as a "sole cause" instruction; that the term "sole cause" means that if any acts or omissions of plaintiff were the sole cause of his injuries, without any negligence on defendant's part as submitted in Instruction No. 2, then plaintiff cannot recover; and that if the jury believed defendant's operator was negligent as submitted in Instruction No. 2 and that such negligence contributed to plaintiff's injuries, then the jury could not find the issue of sole cause in favor of defendant.

The record shows that plaintiff duly objected to the giving of Instruction No. 5 and, obviously, Instruction No. 6 was requested in an effort to impress upon the jury the true meaning of "sole cause" in the instant case. Certainly, plaintiff did not invite, adopt, acquiesce in, ratify or in any other manner appearing of record "waive" the errors in Instruction No. 5 by the request of Instruction No. 6. The cases cited by defendant are not in point.

The judgment is reversed and the cause remanded.

All concur.

On Respondent's Motion for Rehearing

PER CURIAM.

Defendant continues to insist that its "sole cause" instruction (No. 5) was not erroneous. Evidently, we failed to make clear the impropriety of injecting an issue of contributory negligence, as such, in cases submitted solely upon humanitarian negligence. In the opinion, we pointed out that the instruction was erroneous in certain respects but did not specifically rule one of its most glaring errors, to wit, the abstract statement in the first paragraph thereof, which, for convenience, we here quote:

" 'The Court instructs the jury that the plaintiff, John Sheerin, was, under the law, bound to exercise ordinary care and caution for his own safety at the time and place in question, that is such care as an ordinarily careful and prudent person would exercise under the same or similar circumstances.' "

Defendant now contends that it "is well established that an abstract statement of law in an instruction will not require a reversal of a judgment, when it is accompanied with a further call for a finding by the jury of all the facts required by law to justify a verdict."

The vice of the first paragraph of the instruction is that it is not the law in cases involving humanitarian negligence.

In Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484, the theory of humanitarian negligence was thus defined: "The doctrine from which the rule has been evolved is something more than an exception to the law of contributory negligence. It 'proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperiled, when such injury may be averted without injury to others.' * * * It is of no consequence what brings about or continues the situation of peril. It may be through the obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to rescue another, or through his sheer hardihood or recklessness."

Counsel for defendant would be well advised to refer to the scores of cases that since have adhered to the doctrine thus announced. See cases collected in 22 Mo.Dig., Negligence, ▮ .

He who reads Instruction No. 5 knows that, regardless of its purpose, its effect is to distract the attention of the jury from the legal issue of defendant's negligence and to direct it to the false issue of plaintiff's negligence. The courts have long since condemned such instructions by con-

sistently holding them to be prejudicially erroneous. See cases cited in opinion.

The remaining assignments have been examined and are found to be without merit. The motion is denied.