Claude SMITH, Plaintiff-Appellant,

v.

GULF, MOBILE AND OHIO RAILROAD
COMPANY, Defendant-Respondent.

No. 30895.

St. Louis Court of Appeals.

Missouri.

May 15, 1962.

Motions for Rehearing and to Transfer
Denied Sept. 11, 1962.

Lyng, MacLeod, King, Donnelly & Cor-
coran, Russell N. MacLeod, St. Louis, F.
Daley Abels, Clayton, for plaintiff-appel-
lant.

Fordyce, Mayne, Hartman, Renard &
Stribling, Alphonso H. Voorhees, St. Louis,
for defendant-respondent.

DOERNER, Commissioner.

Plaintiff sought to recover damages for
personal injuries claimed to have been sus-
tained in a collision between a truck being
driven by plaintiff and one of defendant's
passenger trains. Following an adverse
verdict and judgment below, plaintiff ap-
pealed.

The locale of the collision was on First
Street, a north-south street, in the City of
St. Louis, north of its intersection with
Biddle Street. There were a number of
tracks in the area, some of which were on
the paved portion of First Street, but the
track here involved ran along the east side
and the unpaved part of that street. The
tracks were straight and level from a point
south of Biddle Street to another consider-
ably north of the place where the collision
occurred. About 100 to 175 feet north of
Biddle Street a paved crossing extended
across the tracks, leading from the paved
portion of First Street to the parking lot of
the Booth Cold Storage Company, situated
east of the tracks. The volume of vehicles
leaving the premises of that concern, as well
as the train traffic, was such that the Booth
Company maintained a watchman at the
crossing to assist vehicles to depart. It was
admitted without contradiction that the
watchman's duties did not embrace helping
incoming vehicles.

The collision occurred on November 8,
1955, about 4:30 P.M. The weather was

clear and it was still daylight. Shortly prior to that time one of defendant's southbound trains had been stopped so that the rear of the train blocked approximately the south half or 25 feet of the Booth crossing, leaving the north half open. Plaintiff, driving a 1954 International panel truck on his way to the C & S Company located in the Booth Company building, proceeded east on Biddle, turned left on a "cut-off" from Biddle to First, and drove north on First on the west side of the stopped train until he reached its rear end. Plaintiff's testimony was that he made a turn to his right, around the rear end of the halted train, and came to a stop. He looked to his left and saw nothing approaching. He could not see southwardly down the set of tracks involved, located to the east of the stopped train, because the train obstructed his view. Plaintiff put the truck in low gear and started to creep forward. Because of his distance back from the bumper, the front end of the truck was in the middle of the northbound rails before he could see to the south down the tracks. He then saw a train approaching from the south, which was approximately 75 feet away, going at a speed he estimated at 10 to 14 miles per hour. Plaintiff immediately put the truck into reverse, started backing up, and had almost gotten clear of the track when the train struck the vehicle at its right front wheel. Plaintiff testified that he did not hear any whistle, bell or horn prior to the collision.

Defendant's engineer, Belz, testified that he was on the right side of the cab of the engine, and that the nose of the engine cut off his view of anything to the left of the tracks which was closer than 70 or 80 feet. He did not see plaintiff's truck prior to the accident. The first he knew of the impending collision was when the fireman, Bates, told him "stop her." At that time the cab was 15 or 20 feet over the Booth crossing, and his train was traveling 8 to 10 miles per hour. He set the brakes and stopped the train as soon as he could. When it came to rest the front of the first of the two diesels was about 80 to 90 feet north of the crossing. Belz stated that as he approached the area he had the train bell on automatic, so that it rang constantly, and that he sounded the whistle for the Booth crossing.

Bates, the defendant's fireman, testified he was keeping a lookout forward from the left side of the cab. He said that just as the engine entered the Booth crossing he saw plaintiff's truck come out from behind the stopped train, and that the truck ran into the left front side of the engine. Bates hollered for the engineer to stop.

William F. Alexander, the watchman employed by the Booth Company, testified on behalf of defendant that he was standing on a switch track, slightly closer than 8 feet to the track involved, and at a point about even with the middle of the Booth crossing. He saw plaintiff's truck as it started around the rear end of the stopped train. Knowing that the northbound train was approaching, he hollered at plaintiff to stop and waved at plaintiff to get back. Alexander said the front of plaintiff's truck was on the northbound tracks when the train hit it. He did not know where the train was when he first saw the truck, could not estimate the speed of plaintiff's vehicle, and didn't know whether a bell was ringing or a whistle blowing.

Plaintiff testified on cross-examination that he was aware a watchman was maintained at the Booth crossing, to help outgoing traffic. He said that he saw Alexander at the same instant that he observed the approaching train; and that Alexander was not standing in the middle of the crossing but even with the end of the parked train so that he couldn't see Alexander until he was a little past the train. Belz, the engineer, testified that as he approached the crossing he saw Alexander waving as though he was trying to stop someone. He said that after seeing Alexander he didn't reduce the speed of the train. Belz also testified on cross-examination that if there had been anything to have stopped for, when he was at the

Biddle Street crossing, he could have stopped the train before it reached the Booth crossing. Bates testified on direct examination that as the train approached the Biddle Street crossing he saw Alexander "* * * giving some signal * * *." Upon request he demonstrated the motion Alexander had made and stated "* * * It could have been a highball or stop * * *." On cross-examination he reiterated that he couldn't tell what kind of signal Alexander was giving, and that he didn't say anything to the engineer until he saw plaintiff's truck.

In view of the limited issues raised, a statement of the evidence regarding plaintiff's injuries is unnecessary.

■ Plaintiff submitted his case to the jury under the humanitarian doctrine on defendant's negligent failure to stop, slacken speed, or warn. No claim is made by defendant that plaintiff failed to make a submissible case. At the request of the defendant the court gave instructions numbered 5, 6, 7, 8 and 9. Plaintiff's only points on appeal are that Instructions 5 and 6 were erroneous and prejudicial.

Instruction No. 6 follows:

"You are further instructed that if you find and believe from the evidence that on the occasion in question as plaintiff drove the truck around the rear of the stopped train there was a crossing watchman who was in plaintiff's view and who warned plaintiff back, and that the approaching train was sounding a warning and if you further find that by the exercise of ordinary care under the circumstances plaintiff could have seen such watchman, or that plaintiff could have heard such warning of the approaching train, in time to have stopped his truck in a place of safety, then you are instructed that if you find that plaintiff drove his truck forward onto the tracks in front of the approaching train and that in so doing he did not act with reason-

able care, then you are instructed that plaintiff was negligent and if you find that his negligence was the sole cause of the collision and that defendant by the exercise of reasonable care could not have avoided the collision after plaintiff came into a position of imminent peril, then plaintiff is not entitled to recover from defendant and your verdict shall be in favor of defendant, Gulf, Mobile and Ohio Railroad Company."

■ Plaintiff criticizes Instruction No. 6 on several grounds, among them being that the issue of plaintiff's antecedent and contributory negligence was thereby injected into the case. In a case submitted solely on the humanitarian doctrine, it is improper for a defendant to inject the issue of plaintiff's antecedent and contributory negligence into the case by his instructions. Fisher v. Williams, Mo.Sup., 327 S.W.2d 256; Sheerin v. St. Louis Public Service Co., Mo.Sup., 300 S.W.2d 483. Instruction No. 6 begins with the hypothesization that there was a watchman at the crossing, in plain view, who warned the plaintiff back; that the train was sounding a warning; and that by the exercise of ordinary care plaintiff could have seen the watchman or heard the warning from the train in time to have stopped his truck in a place of safety. Such a submission could only refer to plaintiff's antecedent negligence, as did the sole cause instruction held to be erroneous in Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743. Defendant contends that the Instruction No. 6 is similar to instructions approved in Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461 and Parmley v. Henks, Mo.Sup., 285 S.W.2d 710. An examination of the instructions approved in those cases discloses that in both the factual situation hypothesized was that plaintiff proceeded into a position of imminent peril *so closely* in front of an approaching vehicle that the defendant *thereafter* was unable to avoid injuring plaintiff. The facts submitted in the instant case that "* * * plaintiff drove his truck forward onto the tracks in

front of the approaching train * * *," tended only to show that a position of imminent peril came into existence, imposing a duty upon the defendant to act. Thayer v. Sommer, Mo.Sup., 356 S.W.2d 72, April 9, 1962.

 Under defendant's theory of the case the issue for decision was whether plaintiff drove his truck onto the tracks so closely in front of defendant's train that the defendant could not thereafter, by the exercise of ordinary care, have stopped its train or slackened its speed to avoid the collision. However, as the instruction was drawn, the jury was told that if it found that plaintiff did not act with reasonable care in driving his truck onto the tracks in front of the approaching train " * * * then you are instructed that plaintiff was negligent * * *." It has been repeatedly held that when the defendant contends that the acts of the plaintiff (as distinguished from those of a third party) were the sole cause of plaintiff's injuries, such acts should not be characterized as negligent. Sheerin v. St. Louis Public Service Co., supra; Carney v. Stuart, Mo.Sup., 331 S.W.2d 558; Thayer v. Sommer, supra. Under the humanitarian doctrine negligence or non-negligence of the plaintiff is beside the point. Sheerin v. St. Louis Public Service Co., supra. To characterize the plaintiff's acts as negligent acts, or to submit to a jury the issue of whether plaintiff's acts were negligent " * * * is likely to mislead the jury into believing or allowing contributory negligence as a defense," Thayer v. Sommer, supra, 356 S.W.2d p. 79. The effect is to distract the attention of the jury from the legal issue of defendant's negligence and to direct it to the false issue of plaintiff's negligence. Sheerin v. St. Louis Public Service Co., supra; Thayer v. Sommer, supra. And as stated in Sheerin v. St. Louis Public Service Co., 300 S.W.2d 483, 489, 490: " * * * The courts have long since condemned such instructions by consistently holding them to be prejudicially erroneous. * * *"

Since the case must be retried, and defendant will have an opportunity to redraft Instruction No. 5 to obviate the asserted errors, it is unnecessary for us to consider that instruction.

For the prejudicial error in the giving of Instruction No. 6 the judgment should be reversed and the cause be remanded for a new trial. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the cause remanded for a new trial.

ANDERSON, P. J., WOLFE, J., and ELGIN T. FULLER, Special Judge, concur.