**James A. MILLER, Plaintiff-Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation, Defendant-Appellant.**

No. 31378.

St. Louis Court of Appeals.

Missouri.

Feb. 18, 1964.

Motion for Rehearing or to Transfer
to Supreme Court Denied
March 12, 1964.

John D. Schneider, St. Louis, for defendant-appellant.

Eugene V. Krell, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

By this action plaintiff sought to recover for the damages to his automobile which he alleged resulted from being struck by defendant's streetcar. Filed in the Magistrate Court, on appeal to the Circuit Court the case was tried to a jury. From a verdict and judgment in favor of plaintiff for $850 defendant brings this appeal.

About the only facts on which the parties agreed were that the collision occurred around noon on December 6, 1954; that the day was clear and the streets dry; and that the locale of the accident was in the City of St. Louis, at the intersection of Osage, an east-west street, with Broadway, a north-south thoroughfare. In brief, plaintiff's version was that he had driven eastwardly on Osage and intended to make a left turn and go northwardly on Broadway; that he had come to a stop on defendant's southbound tracks, waiting for the northbound traffic to clear; and that after he had been stopped in that position for an appreciable period of time his automobile was struck by defendant's southbound streetcar. Defendant's version, on the other hand, was that initially both plaintiff's automobile and its streetcar had been proceeding southwardly on Broadway; that as they neared the intersection plaintiff's automobile passed the streetcar to its right, then veered to the left in the path of and in close proximity to the streetcar, and suddenly slowed almost to a stop; and that despite an emergency braking effort made by the operator the inter-

vening distance was insufficient within which to bring the streetcar to a stop before it struck plaintiff's automobile.

The record discloses that there was substantial evidence warranting the jury to find these facts: Plaintiff drove eastwardly on Osage until he reached Broadway, where he brought his car to a stop in obedience to a stop sign. While stopped he looked both to the north and south. He saw nothing approaching from the north, his left, but the traffic coming from the south, his right, was heavy. He proceeded eastwardly until his automobile straddled the southbound streetcar tracks, where he stopped to await an opening in the northbound traffic. When he came to a stop on the tracks he again looked to his left, and at that time saw defendant's southbound streetcar, then stopped at a stop sign about 150 yards north of him. Thereafter he watched the northbound traffic and did not again observe the streetcar. According to plaintiff, he was stopped on the tracks for, " * * * . Maybe almost a full minute * * * " when the streetcar struck his automobile about the center of its left side, causing him to "fall out," as he expressed it.

Plaintiff neither pleaded nor proved any personal injuries, and sought recovery only for the damages to his car. He submitted his case on a verdict-directing instruction which required the jury to find, among other facts, that the operator of defendant's streetcar, " * * * saw, or in the exercise of ordinary care on his part could have seen plaintiff with his automobile in the aforesaid position of imminent peril * * * " in time thereafter to have stopped the streetcar and avoided the collision. While presented in varying assignments, the sole point raised by defendant on appeal is that the humanitarian doctrine is not applicable where, as here, the only recovery sought is for damages to a chattel.

Defendant's argument as contained in its brief proceeds as follows: That the humanitarian doctrine " * * * was conceived to temper the 'so called' harsh doctrine of contributory negligence"; that " * * * Its origin and purpose was to permit a person who was injured to recover even though he was contributorily negligent, if the defendant saw or could have seen him in peril, and had the means available to avoid the injury"; and that "It is only injury to (the) person that can justifiably abrogate the defense of contributory negligence. * * * " This line of reasoning leads defendant to the conclusion that "Under the law of the State of Missouri, the proof of injury to (the) person is an essential element of the humanitarian submission. * * * " In support of its contention that the humanitarian doctrine is applicable only when a recovery is sought for a personal injury defendant quotes from Krause v. Pitcairn, 350 Mo. 339, 167 S.W.2d 74, 78, the oft-repeated statement that, " * * * Our humanitarian doctrine is reasoned upon precepts of humanity—that tender regard every man must have for the life and limb of other men in times of peace * * *." Defendant also cites such cases as Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, 489, in which appears the familiar passage that the humanitarian doctrine " * * * 'proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperiled, when such injury may be averted without injury to others.' * * * "

█ Defendant's contentions require a brief review of the origin and development of what we presently term as the humanitarian doctrine. The authorities appear to agree that our *true* humanitarian doctrine, as distinguished from the rule of last clear chance, is a variant or extension of the latter.[1] The factual situations which dif-

---

1. Parmele, 92 A.L.R. 47, 144; McCleary, The Basis of the Humanitarian Doctrine Reexamined, 5 Mo.L.Rev. 56, 67 (1940).

ferentiate the three classic last chance cases from the humanitarian case, as described by one author, are set forth in the footnote.[2] As known to every student of the law of torts, the origin of the last chance rule is universally attributed to the celebrated English case of Davies v. Mann, 10 M. & W. 546, 152 Reprint 588, 19 ERC 190.[3] The rationale initially advanced for the result reached in Davies v. Mann, supra, was that of the defendant's proximate, as contrasted with the plaintiff's remote, negligence.[4] This basis for allowing a negligent plaintiff to recover from a negligent defendant was adopted in Missouri in Adams v. Wiggins Ferry Co., 27 Mo. 95. In the interest of brevity we will not attempt to trace at length the evolution in this state of the true humanitarian doctrine, and refer those who would more exhaustively explore the subject to other and more learned sources.[5] We need only note, in passing, that in its development in Missouri it was successively extended from the predicate of proximate-remote cause, through the stages of discovered peril,[6] and discoverable peril (where a duty to look existed),[7] and that it culminated in the landmark case of Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482.

The importance of that case in the evolution of the doctrine lies in the fact that it eliminated obliviousness or inextricability as constitutive elements of an action, and made plaintiff's position of peril the chief basic fact of liability. As stated in Faught v. Washam, Mo., 329 S.W.2d 588, 596, " * * * obliviousness and inextricability have not been essential to recovery un-

2. Becker, The Humanitarian Doctrine, 15 Mo.L.Rev. 359, 360 (1950), distinguishes last clear chance cases from the true humanitarian case as follows: *Case No. 1*—The peril to plaintiff's person, property, or both results from physical helplessness caused by plaintiff's lack of care. Defendant actually discovers the peril in time, thereafter, with safety to himself, to avoid damage to plaintiff by the exercise of care. This is a simple last clear chance case. *Case No. 2*—The facts are the same as in Case 1, except that the defendant does not actually discover the peril, but in the exercise of care he should have discovered it in time to avoid damage, by the exercise of care and with safety to himself. As in Case 1, a majority of courts permit plaintiff to recover for personal injury or property damage under the last clear chance rule. *Case No. 3*—The peril to plaintiff's person, property or both, results from plaintiff's negligent inattentiveness (obliviousness in Missouri judicial parlance). Defendant (as in Case 1) actually discovers the peril, in time, thereafter to avoid damage to plaintiff by the exercise of care. This is a last clear chance case. *Case No. 4*—The injured person, his property, or both, are in a position of imminent peril as a result of his negligent inattentiveness (obliviousness). The injured party could extricate himself from his peril by his own efforts, if he were aware of his peril and used care. The defendant or party against whom claim for damages is made does not actually discover the peril

of the injured party. Nevertheless, in the exercise of care the party causing injury should have discovered the peril in time thereafter with safety to himself by the use of care to have avoided injury to the plaintiff. In other words the party causing injury is also inattentive (oblivious). The Missouri courts permit recovery by the injured party in this case; and in this respect are more liberal than courts of other jurisdictions.

3. It will be recalled that in that case plaintiff's fettered donkey, illegally left to graze on the side of a highway, was struck and killed by defendant's horses and wagon traveling at a "smartish" pace. While the meager statement of facts leaves the question in doubt, it is interesting to note that the factual situation may have involved "discoverable" rather than "discovered" peril, for the opinion states (152 Repr. 588) that "it was proved that the driver was some little distance behind the horses."

4. Trow v. Vermont Cent. R. R. Co., 24 Vt. 487.

5. McCleary, supra; Schwarz, The Questionable Birth of the Missouri Humanitarian Doctrine, 14 Mo.Bar Journ. 28 (1958).

6. Isabel v. Hannibal & St. Jos. R. R. Co., 60 Mo. 475.

7. Harlan v. St. Louis, K. C. & N. Ry. Co., 65 Mo. 22 (dictum); Kelley v. Hannibal & St. Jos. R. R. Co., 75 Mo. 138,

der our humanitarian doctrine since 'the principal opinion in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, overruled prior cases which had restricted the recognized causes of peril to obliviousness and inability to escape "and laid down the broad rule that it is of no consequence *what* brings about *or continues* the peril, even though it be sheer hardihood or recklessness. This covers the whole range of self-exposure to peril from mere negligent inattention to utter, audacious and continuing disregard of known and avoidable danger." '
\* \* \*"

However, it is a matter of legal history that the term "humanitarian doctrine" originated long before the concept of the principal of law bearing that label, and that initially it was used as an alternative name for the last chance rule. So far as we have been able to determine the first use of the word "humane" with reference to the rule which permitted a negligent plaintiff to recover from a negligent defendant was by this court in 1885 in Kelley v. Union Ry. & Trans. Co., 18 Mo.App. 151. "Humanity" was first employed five years later in Kellny v. Missouri Pac. Ry. Co., 101 Mo. 67, 13 S.W. 806, 8 L.R.A. 783. And the first use of the complete term was in Gebhardt v. St. Louis Transit Co., 97 Mo.App. 373, 381, 71 S.W. 448, 450, decided in 1902, where in referring to the St. Louis vigilant watch ordinance this court said:

> "Our understanding of the ordinance is, that as to individuals it is simply declamatory of the municipality's approval of what is commonly called 'the humanitarian, or last chance doctrine,' to wit, that it is the duty of the motorman in charge of a running street car to keep a vigilant watch ahead, and when he sees, or by the exercise of due diligence could have seen, the peril of the plaintiff in time to have avoided injuring him, and fails to do so, the company will be liable, which is the law in this State. \* \* \*"

Thus from its very birth the term "humanitarian doctrine" was employed as another designation of the last chance rule. As late as 1923, one year before the decision in Banks v. Morris & Co., supra, it was stated in State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S.W. 1014, 1018, an en Banc opinion:

> "Neither the petition nor the facts in this case make a case under the 'humanitarian,' 'last clear chance,' or 'discovered peril' doctrine. This doctrine of the law, by whatever name it may be known, contemplates that the party was in imminent peril, and could have been saved from such impending peril by *the exercise of ordinary care by the one inflicting the injury.*"

It must be understood, then, that when Judge Lamm, in Murphy v. Wabash R. R. Co., 228 Mo. 56, 80, 128 S.W. 481 and Dutcher v. Wabash R. R. Co., 241 Mo. 137, 158, 145 S.W. 63, penned the phrases which were merged into the statement that, " \* \* Our humanitarian doctrine is reasoned upon precepts of humanity—that tender regard every man must have for the life and limb of other men in times of peace \* \* \*" he was not writing about the true humanitarian doctrine. Rather, as others had done, he employed the term as an alternate name for the last chance rule. The same observation is likewise true of the statement in Dey v. United Railways Co. of St. Louis, 140 Mo.App. 461, 467, 120 S.W. 134, 136, that the humanitarian doctrine " \* \* \* proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperilled, when such injury may be averted without injury to others. \* \* \*" For an examination of the factual situations which prevailed in the Murphy, Dutcher and Dey cases discloses that each of them fell within one or the other of the three classic last chance situations. That it was the last chance rule which was said to have been founded upon the precepts of humanity and of natural jus-

tice was recognized in Banks v. Morris & Co., supra, where it was said (257 S.W. 484): "* * * This calls for a brief consideration of the 'humanitarian rule,' as applied in this state. The doctrine *from which the rule has been evolved* is something more than an exception to the law of contributory negligence. * * *" (Emphasis supplied.)

Of course, since Banks v. Morris & Co., supra, which eliminated all issues as to extricability and obliviousness and made the position of peril the chief fact of liability, there is some justification for our use of the term "humanitarian doctrine" in its generic sense to include last chance as well as true humanitarian cases. The result, however, as pointed out by McCleary,[8] is that:

"* * * Outside of Missouri, the profession still thinks of the humanitarian doctrine as limited to this one situation of constructive notice applied to mental obliviousness, the other three being considered actual last chance situations, whereas the bench and bar within the state think of the doctrine by virtue of the general formula which makes it applicable to all four situations. This is why it is so difficult for lawyers outside the State of Missouri to understand what a Missouri lawyer really means when he talks the language of the humanitarian doctrine."

In the light of this background, if defendant employs the term "humanitarian doctrine" in its generic sense, then, in general, we agree with its contentions that the doctrine was conceived to temper the harsh rule of contributory negligence, and that its origin and purpose was to permit a recovery by a negligent plaintiff if the defendant saw or could have seen him in imminent peril and thereafter could have safe-

ly averted the injury. But in view of its origin and application we cannot agree that only injury to the person will justify the negation of the defense of contributory negligence. It certainly is not correct as to last chance cases. After all, as pointed out by Parmele in 92 A.L.R. 47, 55, "* * * the donkey whose demise was the occasion of the decision in Davies v. Mann * * * was a chattel and not a person." The first case in Missouri in which the rule established in Davies v. Mann was followed was one for the recovery of damages to a barge. Adams v. Wiggins Ferry Co., 27 Mo. 95. The same rule was subsequently applied regardless of whether the injury was to a person, as in Morrissey v. Wiggins Ferry Co., 43 Mo. 380, or to a chattel, as in Meyers v. Chicago, R. I. & Pac. Ry. Co., 59 Mo. 223. Later, when the concept of the last chance rule had further developed, the court justified the doctrine on the ground that it prevented and restrained the "* * * disregard of human life or limb, *or property* * * *." (Emphasis supplied.) Kellny v. Missouri Pac. Ry. Co., 101 Mo. 67, 75, 13 S.W. 806, 808, 8 L.R.A. 783. In short, courts in Missouri and elsewhere have from its inception applied the last chance rule (the source of our true humanitarian doctrine) to an action where no personal injuries were involved and the only recovery sought was for damages to a chattel. 92 A.L.R. 47, 55; 65 C.J.S. Negligence § 136, p. 759; 38 Am.Jur., Negligence, Sec. 225, p. 911. And since Banks v. Morris & Co., supra, what we presently call our humanitarian doctrine has been applied or tacitly recognized as applicable where the only recovery sought or allowed was solely for injuries to chattels,[9] without discussion of the issue here presented.

We reach, then, the ultimate question of whether the true humanitarian doctrine is applicable in an action where the only in-

8. McCleary, supra, p. 79.

9. McKinney v. Robbins, Mo.App., 273 S.W. 2d 513; Jacobson v. Graham Ship-by-Truck Co., Mo.App., 61 S.W.2d 401; Yontz v. Shernaman, Mo.App., 94 S.W.2d 917; Thomasson v. Henwood, 235 Mo. App. 1211, 146 S.W.2d 88; Roberts v. Chicago, B. & Q. R. Co., Mo.App., 266 S.W.2d 38. And see Wabash R. R. Co. v. Dannen Mills, Inc., 365 Mo. 827, 288 S. W.2d 926.

jury which occurred and the only recovery sought is for damages to a chattel. Defendant cites Glenn v. Offutt, Mo.App., 309 S.W.2d 366, but it appears to us that the factual situation there prevailing presented a last chance rather than a true humanitarian doctrine case. Perhaps we should add that we consider the instant case to present a true humanitarian situation because plaintiff was oblivious to the approach of the streetcar, Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, and the evidence leaves in doubt the question of whether plaintiff, had he awakened to the danger, could have extricated himself and his automobile therefrom by backing his car off of the tracks. There can be no doubt, and defendant does not contend otherwise, that the constitutive elements laid down in Banks v. Morris & Co., supra, are present.

■ We are not, of course unaware of the criticism of the humanitarian doctrine which has been repeatedly leveled at it since Banks v. Morris & Co.,[10] supra. Despite the fact that " * * * The case made law of Missouri has widely extended the rule, far beyond its original concept [11] * * * " it has been suggested that the elimination of the evils of the harsh rule of contributory negligence and those of the humanitarian doctrine may require legislative action.[12] However, we are not asked to determine whether we should continue to follow the true humanitarian doctrine in all actions.

What we are called upon to decide is whether the same principle of law should apply to actions for both personal injuries and property damages. The question presents no problem of determining whether human rights shall prevail over property rights. Rather, the issue is one of the uniformity of the law. So long as we continue to follow the true humanitarian doctrine we can see no logical reason why it should not apply to an action for an injury to a chattel as well as to one for personal injuries. If the doctrine proceeds upon precepts of humanity and of natural justice, why should not the same considerations govern in both cases? Is it humane, or just, to damage or destroy a chattel when the injury may be safely avoided? We think not, and are of the opinion that both logic and justice compel the uniform application of the doctrine in both situations.

For the reasons stated the judgment should be affirmed, and the Commissioner so recommends.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

WOLFE, Acting P. J., ANDERSON, J., and J. CASEY WALSH, Special Judge, concur.

10. See the dissenting opinion of Ellison, C. J., in Perkins v. Terminal R. R. Ass'n, 340 Mo. 868, 102 S.W.2d 915, 932; Smith v. Siedhoff, Mo., 209 S.W.2d 233, 236; Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, 488; Footnote 1; McCleary, supra, p. 82; Becker, supra, p. 361; Schwarz, supra, p. 35.

11. Smith v. Siedhoff, Mo., 209 S.W.2d 233, 236.

12. Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, 488, Footnote 1.